STOKER, Judge.
Plaintiff sued in the trial court to enforce the term provision of an alleged contract to supply defendant with petroleum products for retail sale. Defendant James Clary (Clary) is the owner and operator of a grocery store and gas station in Vidalia, Louisiana. In addition, because plaintiff oil company spent considerable sums on Clary’s business location on installation of above- and-below ground storage tanks, dispensing pumps, “Texaco” signs and various accouterments, plaintiff sued for reimbursement for the money so spent. Defendant Clary answered denying the allegations of plaintiff’s petition and reconvened for loss of profits because of alleged over-pricing by the plaintiff during the ten months the defendant bought gasoline and other products from the plaintiff.
The issue on appeal is did defendant contract an obligation with plaintiff under which the latter would supply and defendant would buy petroleum products for a five-year term under the specifications set out in an unsigned contract form?
*1121 The district court, in a well-written and detailed opinion, resolved this issue in favor of the defendant. The trial court held that any obligations between plaintiff and defendant were made on a day-to-day basis and were not subject to the terms of the unsigned document which provided for a five-year mutual obligation. However, the trial court awarded plaintiff $19,525.22 to compensate for the equipment and installation costs plaintiff incurred. Neither party appeals from the granting of this award, but plaintiff appeals the finding of the trial court that the parties did not agree to the terms of the unsigned document and asks for damages consisting of the profit it would have received over the five-year period. Defendant does not appeal from the trial court’s findings that the allegations of the reconventional demand were not proved. We affirm.
The unsigned document, headed “LEASE” and dated September 10, 1980, provided for a primary five-year term in which defendant would buy petroleum products exclusively from plaintiff to include 80,000 gallons of gasoline per month. Unless terminated by either party, the contract would continue from year to year after the primary term of five years. Although the document in question is denominated as a lease, it is a contract of a different nature. Had it been agreed to, it would have bound plaintiff to supply at least the designated quantity of products on a monthly basis, and defendant would have bound himself to purchase all of his gasoline and petroleum products from plaintiff exclusively for a five-year period. As an incident of the contract, plaintiff agreed to furnish and install the items set forth in the attached equipment list.
In June of 1981, after installation of the equipment and after Clary had begun buying petroleum products from Wilson Oil Company, Clary informed plaintiff he would no longer accept shipments from plaintiff. Clary also informed plaintiff he had entered into a contract with another oil company for the supply of petroleum products. This suit followed.
Plaintiff contends it would never have invested in the installations at Clary’s establishment without a guaranteed market for its products. This argument persuasively suggests that some significant contract term would have been included in any agreement between the parties. However, the plaintiff has the burden of persuading the court regarding the specifics of any agreement between the parties which would have bound Clary to buy from plaintiff for a specified period. Plaintiff has failed to discharge this burden.
A list of the equipment which was installed on Clary’s property was attached to the unsigned document and was signed by the parties. The equipment list appears on a separate sheet of paper and has two signature lines bearing the names of the signers, James Clary and Wilson Oil Company, written beneath it. The three-page unsigned agreement not only has separate blanks for the signatures of the parties, it also includes signature lines for a notary public and two witnesses. The equipment list was signed on behalf of Wilson Oil Company, Inc. by its president, Mike Wilson. He testified that failure to sign the “lease” along with the equipment list was the result of inadvertence. He further testified that the parties nevertheless actually agreed to the written “lease” even though they failed to sign it. However, Wilson also testified that he had signed agreements such as the unsigned document between fifteen and twenty times. We agree with the trial court that the failure to sign the written “lease” agreement is the clearest indication that the parties never agreed to the terms contained in it.
Moreover, Clary unequivocally testified that he did not agree to the contract and in fact refused to sign the document because he did not agree to its terms. Although the evidence indicates that Mr. Wilson believed that Clary had agreed to the terms of the unsigned document, there is no clear evidence of a meeting of minds concerning the contract.
Plaintiff-appellant also contends that in dealing with plaintiff over the ten-month *1122 period, defendant tacitly accepted the terms of the written document. The trial court found there were frequent heated discussions between Clary and Wilson. Clary testified that the price per shipment of gasoline from Wilson Oil Company was so priced that he could not sell the gasoline at a competitive price. He testified that he and Mike Wilson were constantly trying to work out something to rectify this problem. Clary testified that from the beginning he refused to sign the document because of the lack of guarantee of a profit in the contract.
The evidence indicates that Clary continued to protest that the non-competitive prices of Wilson Oil Company, Inc. put him in a poor position for competition with his competitors. The gasoline market in Vida-lia, Louisiana is highly competitive due to its proximity to Natchez, Mississippi. Several of Clary’s competitors are located very near Clary’s place of business. The fact that Clary’s current agreement with a gasoline supplier guarantees a profit buttresses his position that he continued to refuse to bind himself to the Wilson contract without a guaranteed profit. Further, when Clary was contacted by a secretary of the law firm representing Wilson Oil Company at some later date and was requested to sign the document, he indicated that he would not sign until he and Wilson had reached an agreement.
We hold that the trial court was correct in finding that James Clary never expressly, impliedly, or tacitly agreed to bind himself to continue to buy gasoline products from Wilson Oil Company, Inc. under the terms set out in the unsigned written document. Therefore, the trial court correctly concluded the defendant did not breach his agreement with plaintiff.
DECREE
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by the plaintiff-appellant.
AFFIRMED.